UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LANQUEST CORPORATION,

    Plaintiff,

    v.

MCMANUS & DARDEN LLP,

    Defendant.

Civil Action No. 11-00722 (BAH)
Judge Beryl A. Howell

### MEMORANDUM OPINION

In this action, the plaintiff, LanQuest Corporation, seeks payment for computer network engineering, integration, and consulting services provided to the defendant law firm, McManus & Darden LLP. The plaintiff is a Maryland corporation and the defendant is a firm operating in the District of Columbia. Pending before the Court is the plaintiff's motion for summary judgment on Count I of the Complaint, which seeks payment of an outstanding invoice in the amount of $90,541.40. For the reasons explained below, the plaintiff's motion for summary judgment is denied.[1]

**I.    BACKGROUND**

According to the Complaint, the parties had an oral contract under which the plaintiff performed computer network engineering, integration, and consulting services ("IT services") for the defendant for over a decade from June 2000 through November 2010. Compl. ¶¶ 5-7. The plaintiff submitted invoices for the work it performed "from time-to-time" and those invoices were always paid. *Id.* Consistent with past practice, the

---

[1] This Court has jurisdiction under 18 U.S.C. § 1332, due to the diversity of citizenship of the parties and the amount in controversy in excess of $75,000.

plaintiff submitted an invoice dated December 6, 2010 (the "Disputed Invoice") covering work performed over the prior two years, from July 2008 through November 2010. Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 6; Disputed Invoice, Ex. 2 to the Affidavit of Mark J. Chambers, ("Chambers Aff."), sworn to June 1, 2011. The Disputed Invoice totals $90,541.40 and the defendant law firm has not paid it.[2] Compl ¶ 7; Pl.'s Mem. at 6. Based upon the foregoing, the plaintiff believes it is entitled to summary judgment in the amount of the Disputed Invoice.

The defendant counters that summary judgment is inappropriate because there are disputed issues of material fact regarding the existence and terms of the alleged oral contract between the parties. Moreover, even if there were an enforceable oral contract, the defendant has raised disputed issues concerning the plaintiff's performance under the contract.

The plaintiff's motion for summary judgment is now before the Court.

**II. SUMMARY JUDGMENT STANDARD**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based upon the pleadings, depositions, and affidavits and other factual materials in the record. Fed. R. Civ. P. 56(a), (c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court must view all inferences in a light most favorable to the non-moving party. *Tao*, 27 F.3d at 638 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[2] The Disputed Invoice actually consists of two invoices – one for $89,677.50 and a supplemental merchandise invoice for $863.90. *See* Pl.'s Mem. at 6. For ease of reference, the Court will refer to these invoices collectively as the Disputed Invoice.

2

242, 250, 255 (1986)). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment is generally appropriate only after the non-moving party has been afforded an adequate opportunity to conduct discovery. *Hellstrom v. U.S. Department of Veteran Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *see also McWay v. LaHood*, 269 F.R.D. 35, 39 (D.D.C. 2010) (citing *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997)). A grant of summary judgment may be appropriate prior to discovery where the moving party can demonstrate that there is no disputed issue of material fact. "[T]he nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Bias v. Advantage Intern., Inc.*, 905 F.2d 1558, 1561 (D.C. Cir. 1990) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986)). It must "provide evidence that would permit a reasonable [fact-finder] to find" in its favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

Thus, a party seeking to oppose a motion for summary judgment as premature must cite to materials in the record or submit an affidavit showing the presence of a genuine dispute, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56(c)(1)(B). This affidavit should lay out the material facts sought through discovery to contest the motion for summary judgment and a reasonable basis to believe such facts are discoverable. The Court's role in evaluating these factual assertions is limited and "the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150

(2000); *see also AMTRAK v. ExpressTrak, L.L.C.,* No. 02-1773, 2006 U.S. Dist. LEXIS 74922, at *25-26 (D.D.C. Oct. 16, 2006).

### III. DISCUSSION

In applying the summary judgment legal standard to the instant record, the Court has considered the allegations set forth in the Complaint and the declarations and affidavits presented by both the plaintiff and the defendant. No discovery has yet taken place in this case so the record consists solely of the documentary affidavits or declarations submitted in connection with this motion. As explained below, this record compels the conclusion that genuine issues of material fact are disputed and summary judgment is not appropriate at this time.

In support of its motion for summary judgment, the plaintiff has submitted a lengthy affidavit of its president, Mark Chambers, who describes the history of the relationship between the plaintiff and the defendant (and the defendant's predecessor firm); the Disputed Invoice; and email correspondence relating to certain entries in the Disputed Invoice. The plaintiff's position is straightforward. As noted above, the plaintiff contends that it is undisputed that the parties had an oral contract, pursuant to which the plaintiff provided the defendant with IT services, and that the defendant must now pay the invoice for those services.

The defendant disputes the existence of the oral contract, citing the lack of agreement between the parties on the material terms of their relationship. *See* Def.'s Statement of Disputed Material Facts ("Def.'s SMF") ¶¶ 1-2. The defendant has attached two declarations in support of its position: the declaration of the managing partner of the firm, Eric Darden, and the declaration of a computer consulting expert, Victor Rezmovic.

These two declarations set forth specific facts that raise genuine issues about whether the plaintiff is entitled to payment of the invoice in the amount of $90,541.40.

The defendant contests the plaintiff's most fundamental assumption—namely, whether there was a viable oral contract between the parties. Certainly, the parties agree that they had no written agreement, even after ten years of an ongoing relationship. The defendant correctly cites District of Columbia law that a valid and enforceable contract requires both: (1) intention of the parties to be bound; and (2) agreement as to all material terms. *See Gaujacq v. EDF, Inc.,* 601 F.3d 565, 579 (D.C. Cir. 2010); *Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1249 (D.C. Cir. 2007) (valid and enforceable contract must include intention to be bound and agreement as to all material terms); *Simon v. Circle Assocs.*, 753 A.2d 1006, 1012 (D.C. 2000); *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995); *Georgetown Entm't Co. v. District of Columbia*, 496 A.2d 587, 590 (D.C. 1985). The party asserting the existence of an oral contract has the burden of proving both requirements. *See New Econ. Capital, LLC v. New Mkts. Capital Grp.*, 881 A.2d 1087, 1094 (D.C. 2005).

Additionally, a "contract must be sufficiently definite as to its material terms (which include, e.g., subject matter, price, payment terms, quantity, quality, and duration) that the promises and performance to be rendered by each party are reasonably certain." *EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996 (D.C. 2008) (quoting *Rosenthal v. Nat'l Produce Co.,* 573 A.2d 365, 370 (D.C. 1990). "All the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to [be enforceable]." *Rosenthal*, 573 A.2d at 370 (quoting *V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir. 1968)). To be enforceable, however, the contract terms must

be "sufficiently definite so that the parties can be reasonably certain as to how they are to perform." *EastBanc, Inc.*, 940 A.2d at 1002 (quoting *Duffy v. Duffy*, 881 A.2d 630, 638 (D.C. 2005)). Moreover, "the terms of the contract [must be] clear enough for the court to determine whether a breach has occurred and to identify an appropriate remedy. . . ." *Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 535 F. Supp. 2d 60, 69 (D.D.C. 2008) (quoting *Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320, 327 (D.C. 2001)).

In this case, the parties agree about the price of the plaintiff's IT services: plaintiff's rate was $110.00 per hour for services provided during normal business hours and $165.00 per hour for services provided outside of normal business hours. Other key terms appear to be hotly disputed, however, such as the terms of payment, the schedule of invoicing, the pre-approval condition from Eric Darden alone for any work performed, and the quality of the work performed.

In particular, the defendant asserts that, pursuant to an understanding reached by the parties in November 2008, the plaintiff had to bill the law firm monthly and was not authorized to do any work without Mr. Darden's approval. Affidavit of Eric Darden, sworn to June 16, 2011 ("Darden Aff.") ¶ 6. According to the defendant, this understanding arose following a prior dispute between the parties that occurred in November 2008, when the plaintiff submitted three invoices for a substantial amount of money for work performed over the preceding two-and-a-half years. *Id.* ¶¶ 5-6. According to Mr. Darden, although the firm paid that invoice, he spoke to plaintiff's president, Mark Chambers, and made clear certain terms for their continuing relationship, including timely, monthly invoicing and pre-approval by Mr. Darden. *Id.* ¶ 6.

6

The plaintiff does not believe that these two terms are material or part of the oral contract. Instead, the plaintiff seeks to have the oral contract enforced without these terms based upon the "consistent course of conduct between the parties dating back to at least 2003…" Pl.'s Reply Mem. in Supp. of Mot. for Summ. J. at 2-3. The law in this Circuit and District of Columbia law does support the general assertion that, even where there is a written contract, a party's course of conduct can constitute a waiver of specific contractual provisions and be relied upon by the parties as a modification of any enforceable contract that exists between the parties. *Nortel Networks, Inc. v. Gold & Appel Transfer, S. A*., 298 F. Supp. 2d 81, 88 (D.D.C. 2004) (citation omitted) ("[I]ntent to waive a known right need not be expressly stated but may be inferred from conduct inconsistent with an intent to enforce that right."); *AMTRAK*, 2006 U.S. Dist. LEXIS 74922, at *29 (D.D.C. 2006) (same); *Radiation Sys., Inc. v. Amplicon, Inc*., 882 F. Supp. 1101, 1103 (D.D.C. 1995) (a party's course of performance can modify the contracted terms of a lease agreement). The problem for the plaintiff in this case, however, is that the new conditions allegedly set out by Mr. Darden in November 2008 for monthly invoices and pre-approval were precisely intended to change the course of prior practices between the parties with new terms "because without such conditions it was impossible for McManus & Darden to manage its business affairs, and to manage the services allegedly provided by LanQuest." Darden Aff. ¶ 9.

The Court need not decide whether there is an enforceable oral contract or not at this stage of the litigation because there are sufficient disputed issues of material fact

involving the key terms of any such contract to make summary judgment inappropriate.[3] *See Steven R. Perles, P.C.,* 473 F.3d at 1249-1250 (reversing district court finding that an oral contract existed because the parties "did not agree on two essential elements of a services contract-how *long* [plaintiff] would have to work on the case… and what *kind* of work she would have to do.") (emphasis in original).

Even assuming that there is an enforceable oral contract between the parties, the parties also dispute whether the plaintiff is in breach for, among other things, (1) failing to comply with the billing schedule that Mr. Darden required; and (2) improperly performing services, such as failing to provide necessary passwords and allowing unauthorized copying of the firm's data.[4] *See* Def.'s SMF ¶ 5; Darden Aff. ¶ 10. Finally, there is a dispute over the accuracy and reliability of the Disputed Invoice and, consequently, the total amount due under that invoice. The defendant suggests that various entries on the invoice reflect either double billing or unauthorized services. *See* Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 9; Darden Aff. ¶ 19. Thus, even assuming the existence of an enforceable contract, summary judgment in the amount of the invoice would still be inappropriate at this stage.

## IV. CONCLUSION

A number of material issues remain in dispute between the parties and preclude summary judgment. The defendant should have an opportunity for discovery and to present evidence bearing on the disputes of material fact it has raised. *See NRM Corp. v.*

---

[3] Ironically, if the defendant ultimately prevails in its argument that no oral contract existed, the defendant's liability could actually end up being greater, should the plaintiff prevail on its *quantum meruit* claim in Count II of the Complaint.

[4] The issues related to whether LanQuest's services were properly performed stem from the fact that the law firm underwent a major reorganization in 2009, with several members of the firm departing. Darden Aff. ¶ 10.

*Hercules, Inc.,* 758 F.2d 676, 684 (D.C. Cir. 1985) (reversing grant of summary judgment by district court in light of material questions raised by defendant over scope of the agreement to modify the original contract). The plaintiff's motion for summary judgment is therefore DENIED.


DATED: July 12, 2011                                /s/ *Beryl A. Howell*
                                                                        BERYL A. HOWELL
                                                                        United States District Judge